Good morning, everyone. So with respect to the assigned errors for Mr. Morel-Pineda, we presented four assigned errors. I'm going to rest on the briefing with respect to the fourth error, the evidentiary challenge, and focus really on the first three assigned errors that I believe are all interconnected. You know, this is a case where the defense discovered misconduct by the government's key witness, an informant that testified exclusively about a drug transaction on one particular day. We discovered the misconduct shortly before or before this witness testified. As a result, we wanted an evidentiary hearing. The defense wanted an evidentiary hearing to develop the record about this misconduct. The trial judge denied that. We then asked for a continuance on a case that really was not particularly complicated, a continuance so we can investigate the misconduct before this witness was going to testify. But the continuance that you asked for, it was to gather some phone records, right, to corroborate the testimony. And the judge made some determination that it would not really do, it's not going to show you who was the caller. It was just going to show a phone number. So even if he granted the continuance, it wouldn't really matter. Isn't that the way the judge ruled? Well, first of all, my request was not just phone records. And if we go to the excerpts of record 170 through 171, that's where I articulate what I'm looking for, and it's to gather records. That included phone records, but it also include all records. And phone records does include text messages. And ultimately, at the end of the day, that's what was discovered. That gets into my third assignment of error that had the jury been presented. Before you go there, you got to cross-examine this individual, right? Yes. Right. So you asked questions about the alleged tampering with the witness, right? Correct. And he was questioned in court before the jury regarding this, correct? Correct. So the jury got to see his answers to those questions? Correct. Okay. Thank you. So the problem though is that the answers consistently blamed Debbie, the girlfriend, consistently blamed Debbie for authoring and sending and being responsible for this message, all right? Had we gotten the continuance, that would have developed into us discovering this new text message, but no one ever claimed we were never acting with due diligence. No one ever said that we failed to act with due diligence when we presented this in our motion for a new trial. That new evidence would have boxed this witness in by having to essentially admit that, yes, he was responsible. Why was that the case? Did you try to call the girlfriend? I did not call the girlfriend and I didn't try. Were you prevented in some way from doing that? I had reason to believe that if I called the girlfriend, she would have simply testified consistent with what Tony Myers testified to and that she would have testified she was responsible. She was responsible for everything. My point is that this new evidence would prove that all of that was a lie and it had to have been a lie because this new evidence, which was a text message submitted the night before trial, was a follow-up to what was sent the night before. What was sent the night before was, do you want to win your trial? This was the quid pro quo, the bribe. I'll give you something, Mr. Morrell, if you give me something in return, all right? Tony Myers testified, that's not me, that was all Debbie, right? But then the next day before trial on a different account, which was exclusively Tony Myers' account, he sends this follow-up. In that follow-up, we submit your honors, would have boxed Tony in, forcing him to acknowledge that, you know what? It wasn't Debbie. It was me. I was responsible. Not only because the messages say that he was the author, but on top of that, it would prove that when he told the jury, I'm not a Facebook guy. I couldn't have done this because I'm not a Facebook guy. I haven't my girlfriend. They're all on that. This new evidence would prove that he lied about that, pure and simple. What if the judge had said, rejected his testimony and said, jury, you may not take into account Mr. Myers' testimony? There was other testimony and other evidence presented to convict him, correct? I dispute that. I dispute that. And that was the whole premise of this argument for, you know, again, you got the motion for the continuance. And just to back up a bit, and I'll answer this question in a second. If we look at this methodically, the judge, you know, we submit, I'm arguing that he acted arbitrarily and unreasonable because we were not using this motion to continue for a delay tactic. We were not, this motion would not have inconvenienced anyone. If the judge was concerned that maybe it might inconvenience the jury, the judge certainly could have asked the jury. This was a day and a half trial. And the judge simply rubber stamped the denial when we presented a good faith argument that we might be able to discover something here. Right. And so the evidence though, the other evidence at the trial unrelated to the messages, these messages, but with respect to his phone, with respect to the detective and the other evidence, that's pretty significant evidence, is it not? Well, if we look at it all together, what do we have? First of all, it's not his phone. It wasn't registered to him. This phone was not registered to my client. Number two, I think most significantly is that Mr. Morel Panetta was only charged with one event, April 24th. He was not arrested on April 24th. This was a drug transaction that was out of the view, out of the observation of the entire surveillance team. It was a drug transaction that occurred in Mr. Myers' car. So the government necessarily had to rely on Mr. Myers' testimony that, hey, he observed this transaction involving $1,200 worth of methamphetamine. Counsel, what's the government misconduct? The government misconduct was that the government relied on Mr. Myers after being aware of this attempt to bribe. And I would direct the court to, it was where the judge's oral ruling, and this is excerpts of record 39, where the court says that the court concludes that the government was not even aware of it until alerted by the defense. We alerted the government before Mr. Myers testified. But yet, instead of saying, we're never going to have anything to do with Mr. Myers going forward and striking his testimony or saying, you know what, we don't even need him. So we're not going to even endorse him as a witness. The government continued to use and rely on Mr. Myers' testimony that there was this drug deal that occurred in his car. I take it the suggestion of the messages was that if some money was forthcoming, maybe Myers would not appear at the trial and testify. Is that sort of the underpinnings of the suggestion? The suggestion is, Mr. Morel-Pineda, do you want to win your trial? If you want to get behind that, isn't the inference from that that if the sender of that message got something back from your client, maybe incriminating witnesses would not appear? That's what it was, wasn't it? To me, it sounded like blackmail. It sounded like Mr. Myers saying, blackmail, graymail, whatever you want to call it. But here's the question I'm leading to. Why in God's name would the government do that? It would do what and continue to endorse Mr. Myers? Incur girlfriend of an undercover informant witness to try to suggest to the defendant that there was a way to avoid the charges. Okay, I agree, your honor. The government is not encouraging or asking Mr. Myers to do this. And that's why there was the misconduct. The misconduct is continuing to endorse it. And that's why I also have the third assignment of error, which if the court agrees that dismissal is not the appropriate remedy, then the third assignment of error, which relies on the young case, right, where there was misrepresentations made at trial, the government became aware of them after the fact, but still continue to endorse the misrepresentations about where drugs were placed inside a car. What is the misrepresentation and reliance here? The misrepresentation and reliance here is all about endorsing a witness that says, I have nothing to do with trying to tamper with and corrupt the trial. When you could have called the girlfriend, the girlfriend would have just simply said exactly what she would have said. Did you even try to interview her? Hypothetically, if the girlfriend testifies. I'm not asking a hypothetical question. Did you even attempt to interview her? We made a decision not to interview her, your honor. The record. So you didn't even ask the government to make her available for an interview, correct? No, we did. She was available to testify. All right. This was something that occurred right in the middle of trial. She was available to testify for a number of reasons, we chose and made a decision not to endorse her or call her as a witness. So you, you made the tactical decision not to put on a witness that might have shown the conspiracy that you're sort of alleging, right? Well, because we believe that she would have said there was no conspiracy. We believe that she would have taken the blame for everything and testified that she was responsible solely 100% for this message. And Tony Myers had nothing to do with it. It wouldn't have helped our case. It would have been consistent exactly with what Mr. Myers testified to quite frankly, it would have been the same exact thing. So we decided not to. That's what the record suggests. Then fast forward until after the verdict, we discover new evidence that seems to support this claim that Mr. Myers lied about that, hence getting us into court for a new trial. And that's gets to the third assignment of error, which is the judge, number one, applying the wrong standard for determining whether we should get a new trial. All right. Applying a sufficiency of evidence standard. And number two, completely disregarding the emoji message, the second message that we're relying on as being useless. That was in the court's order, essentially saying that it was useless. Circling this, this message then circles back to the value of what this would be. So you take away the taint of, you know, us not being allowed to use this message in a new trial. Either Mr. Myers is not going to testify because the government promised that they would never use him again. Or if he does testify, he would then necessarily be confronted with evidence that directly contradicts any claim that he might make that he's not a Facebook guy and doesn't use Facebook and really nothing to do with this message. So, you know, the real heart, your honor, about what this is all about is you have a material witness and the trial judge acknowledged Tony Myers is quote, a material witness. That's at excerpts 174. He is a material witness who attempts to bribe and attempts to get this client. We discovered that we wanted to investigate. We were shut down all the way. And then after the verdict, we discover new evidence that would have altered the strategy of how we would have examined Mr. Myers. And we were deprived of having a new trial. This has nothing to do with Debbie Stewart because I am convinced that Debbie Stewart would have said exactly what Tony Myers testified to. And that is Tony Myers had nothing to do with this. He didn't commit any misconduct, blame everything on me. And that would have been, that would have just led us to where we ended up with where Tony Myers testified that, hey, he had nothing to do with it. It was all his girlfriend. Do you want to save some time? I'm sorry? Do you want to save some rebuttal time? Yes. Two minutes, please. Whatever's left on the clock. Thank you. Mr. Morgan. Good morning, your honors, and may it please the court, Michael Morgan for the United States. Before addressing the defendant's substantive arguments, I think it's important to take a step back and sort of recognize that the question of Mr. Myers' credibility is really a complete sideshow. The defendant's guilt was overwhelmingly proven by the evidence completely independent of Mr. Myers' testimony. This was a controlled buy in which the actual hand-to-hand was recorded on tape. So there's simply no defense to this charge. And in fact, that's, it's quite interesting that the defendant's arguments completely ignore all the substantive evidence of guilt. And indeed Myers' substantive testimony about the transaction on April 24 is completely corroborated. So even if his credibility was completely demolished, even if the jury completely ignored his testimony, the evidence of guilt was overwhelming. And you could just reject all of the defendant's arguments on that basis alone, that this was just anything that happened was harmless. Now, circling back, the defense is proceeding from a premise that simply has not been proven. The defense's position is that Mr. Myers attempted to solicit a bribe. Mr. Myers denied doing that. The defense has presented zero evidence, zero, to contradict Mr. Myers' testimony. As Judge Hawkins recognized, they could have called the girlfriend. They didn't. They chose not to. Counsel has conceded that was a strategic call, not even to interview her. So I'm sort of at a loss here. And especially on the standard of review here for a misconduct claim, you got to do the evidence in the light most favorable to the government. Mr. Myers denied sending the messages. If he didn't send the messages, he didn't solicit a bribe. Case closed. It's really quite that simple. And even the Maybe someone was soliciting a bribe. Maybe, as Mr. Myers testified, they just wanted to be left alone. They weren't trying to solicit a bribe. Who knows? That's the point. Nobody knows. But even though, whatever it is, there was cross-examination regarding it, correct? Oh, correct. And not only was there cross-examination, the defense used that cross-examination to argue that these were bribe solicitations. Now, I can't say that's misconduct. That's an interpretation of the evidence, but it's certainly not the only interpretation. And especially considering that the only witness to testify to them flat out denied that he sent them, and flat out denied that he knew they were going to be sent before they were sent. What about the text message, the later text message? He focused significantly on that, related to the trial testimony. Okay, so technically speaking, that second testimony should not even be in the record. And I'll explain why. It was introduced as an exhibit to the motion for a new trial. But it's not newly discovered evidence under the law. Clearly not. It was in the defendant's possession all along. I'm sorry the defendant didn't bother to go look for it, but he had it. He had it for two months, never bothered to look for it. So it's not newly discovered. And it goes to impeachment anyway. So for that reason, it's not newly discovered. So it's simply not evidence that's really relevant to the case at all. The district judge was quite appropriate to discount it in the new trial motion because it didn't form a basis for a new trial. And the district judge certainly can't be faulted for not taking into account with respect to the time. He only had the record he had. So there's that. And on the substance, again, we're simply assuming, the defense is assuming that Mr. Myers sent that message. That's an assumption. That's it. We don't know. I mean, could he have sent it? Maybe. Could his girlfriend have sent it? Maybe. We don't know. So this message is simply not probative. It's not probative of anything. The defense says we could have confronted him about it, and he could have said I didn't send it. That's where we're at. I have a question. Sure. My understanding is that the defense brought this information to the intention of the government. Is that correct? That is correct. And I assume after receiving that information, someone from the government talked to Myers to find out what happened or what his reaction to this information was, correct? That is correct. And you got the response back. I presume you sent an agent out to talk to him. When you got the response back, the response was, I didn't send this. It looks like it was my girlfriend. Is that a fair substance? That's what Mr. Myers said and what Ms. Stewart said when she was interviewed as well. Was that information provided to the defense before trial? It wasn't provided before trial because the messages were brought to the government's attention after the first trial day. But that evening or the next morning, once we learned and the next morning before trial starts, we relayed the substance of those interviews to defense counsel. So they knew about it before Mr. Myers took the stand at the soonest opportunity. You've answered my question. Thank you. Okay. And with respect to the continuance, the district judge was quite correct that leaving aside that this was seeking continuance in the home for who knows how long, the defense was just fishing. They didn't have any specific evidence that they wanted to seek that would be relevant to the question of guilt or innocence. Even if they were trying to dig up more impeachment information, that was purely speculative. I mean, the defense counsel even conceded to the district judge that we don't know if we get this information whether it's going to be helpful or not, but we'd like to go look at it. Well, that's a pretty big factor for a district judge to take into consideration when you're asking me to continue a trial for you to do some investigation that may and in all likelihood is not going to lead to anything. The information they wanted was Facebook records and cell tower data. It's yet to this day, I have not heard an explanation how either of those pieces of data would show you who sent the messages. So basically just on that fact alone, it was a permissible exercise of discretion not to grant a continuance here. And again, there's no prejudice because they got to make the argument they wanted through cross-examination. So maybe they've gotten more evidence to support that argument, but didn't stop them from making it. And again, circling back is that at the end of the day, Mr. Meyer's testimony was just really not essential to proving the defendant's guilt. Unless the court has any other questions about this, then I would ask that the judgment be affirmed. Thank you. Mr. Cantor. Thank you. This is newly discovered evidence because the government is claiming now, the government is claiming now that we should have been able to discover this at the trial. No one ever made that argument when we were presenting this in support of our motion to motion for a new trial. The government therefore has waived that claim because the trial court has already ruled on the merits and deciding that the new evidence would be useless, would not be helpful to the defense, failed to act with due diligence. And yes, we have the opportunity to cross-examine Tony Myers, but Tony Myers never was confronted with this new exhibit where it has his name and photo on the text message with the emoji hand. Clearly it is him who is sending this message. That would have forced Tony Myers to at least acknowledge that he is a Facebook guy. He uses Facebook and then be forced to explain why is he doing this the day after a message was sent to my client saying, do you want to win your trial? Meet me at McDonald's. This is Tony. And then finally, your honor, when the agent, this is getting to judge Hawkins's question, when the agents interviewed Tony, Tony lied to the agents, the prosecutor, the trial prosecutor said on the record, when we were trying to sort all of this out, it is disturbing that he lied, referring that he lied to the agents. That is the, that was the sentiment of the prosecutor at the time. So the prosecutor is going into this trial to finish things up after Mr. Myers had testified or Mr. Myers first said he had no knowledge of the message and then later concedes on cross that he became aware of it, but it was still Debbie's fault. That was enough to cause the prosecutor to say it's disturbing that he would lie. If the judge was concerned that the to continue with inconvenience, anyone, the judge could have asked the jury, would it inconvenience anyone? Instead, there was just this rubber stamp denial, no continuance, no new trial without us being allowed to explore this new evidence that was discovered. And on those grounds, if dismissal is too extreme of a remedy, give Mr. Mr. Morrell-Pineda a new trial. Thank you. Thank you. Our thanks to both counsel. The case of United States versus Morrell-Pineda is submitted and we're adjourned for the morning.
judges: Hawkins, McKeown, Kendall